**Timothy A. Solomon**, OSB 072573
    Direct:  971.634.0194
    Email:   tsolomon@LLG-LLC.com
**Justin D. Leonard**, OSB 033736
    Direct:  971.634.0192
    Email:   jleonard@LLG-LLC.com
**Holly C. Hayman**, OSB 114146
    Direct:  971.634.0193
    Email:   hhayman@LLG-LLC.com
**LEONARD LAW GROUP LLC**
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
Fax: 971.634.0250

    Counsel for Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**4 Him Food Group, LLC**, dba **Cosmos Creations,**<br><br>    Debtor. | Case No. 19-62049-tmr11<br><br>**DECLARATION OF JOHN P. STRASHEIM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR AND RELATED RELIEF** |

    I, John P. Strasheim, declare pursuant to 28 U.S.C. § 1746 and state as follows:

    1.    I am the Chief Executive officer for 4 Him Food Group, LLC, d/b/a Cosmos Creations ("**Cosmos**" or the "**Debtor**"), the debtor in the above-captioned chapter 11 case.

    2.    I am submitting this Declaration in further support of the Debtor's Motion for Order Authorizing the Sale of Substantially All Assets of the Debtor and Related Relief (Dkt. 76) (the "**Sale Motion**").

//

//

**Page 1 of 5 –** DECLARATION OF JOHN P. STRASHEIM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR AND RELATED RELIEF

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

Case 19-62049-tmr11   Doc 89   Filed 10/29/19

## Background Information

3. As further set forth in my Declaration in Support of First-Day Pleadings (Dkt. 5), the Debtor underwent a period of rapid expansion between 2011 and 2015, growing from a small rented space with around $300,000 in annual sales, to owned facilities of over 133,000 sq. ft. and sales of nearly $17 million in 2015. The company continued to invest and build new equipment expanding its production capabilities, as well as its internal processes for faster and more accurate resource planning.

4. However, the Debtor was also highly dependent on two revenue streams. Specifically, in 2015, Sam's Club and Costco accounted for 70% of the company's revenue.

5. Unfortunately, the company's high growth rate could not be sustained, when various market factors unrelated to the Debtor's business led to a loss of the Sam's Club and Costco accounts.

6. During the ensuing period of unprofitability, Cosmos was unable to pay back a line of credit that had been set up to produce a very large order for Costco. As a result, despite the previously positive relationship between the parties, the Debtor's principal lender, Columbia Bank, began to restrict the Debtor's ability to borrow. The Debtor was then forced to take out high-interest loans with a variety of private lenders in order to continue operating. Friends and family of the Debtor and its principals also loaned significant sums to the company.

7. Although the borrowed money enabled the Debtor to continue operating, the company was not able to return to profitability as quickly as it had projected. As a result, a number of lenders threatened or began to exercise remedies, including garnishments against the Company, which led to further operational difficulties. Eventually, Columbia Bank scheduled a foreclosure of the Debtor's assets for July 3, 2019.

## Prepetition Efforts to Refinance/Sell Company

8. As its struggles compounded, Cosmos began speaking with various potential investors and/or acquirers.

Page 2 of 5 –   DECLARATION OF JOHN P. STRASHEIM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR AND RELATED RELIEF

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

Case 19-62049-tmr11    Doc 89    Filed 10/29/19

9. In approximately October 2018, the Debtor also engaged Armory Securities, LLC ("**Armory**") as financial advisor and placement agent, to explore a potential sale of the business and/or debt financing transaction.

10. Armory contacted numerous additional potential transaction partners, including approximately 27 strategic buyers and 108 financial investors.

11. Armory and the Debtor developed a marketing package, and prepared a dataroom for parties to evaluate a potential transaction.

12. A teaser and NDA were finalized and circulated to targeted investors in November 2018. A confidential investor presentation was provided to parties who signed an NDA. Those parties were also provided access to a data room.

13. Approximately 57 parties executed NDAs, and 44 were granted access to the online dataroom.

14. Six parties proceeded to the point of calls and/or meetings with management, and four visited the Debtor's facilities for site tours.

15. The marketing process yielded significant interest; however, the Debtor's capital structure was a consistent issue and impediment, as was its debt burden.

16. Ultimately, the process yielded only two proposals.

17. Gordon Brothers offered $7.5 million to acquire all the assets of the Debtor via a reorganization process.

18. Summit Investment Management offered to purchase the Debtor's existing debt and additional financing, <u>provided that</u> the Debtor could raise $2.5 million in additional equity – which it could not do.

19. Neither of those proposals were feasible under the circumstances, and ultimately Gordon Brothers and Summit Investment chose not to proceed further in discussions.

Page 3 of 5 – DECLARATION OF JOHN P. STRASHEIM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR AND RELATED RELIEF

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

Case 19-62049-tmr11    Doc 89    Filed 10/29/19

20. Around March 2019, I first approached Dominguez Family Enterprises, Inc. ("**Dominguez**"), the owner of the "Juanita's" brands, to discuss a potential transaction with them.

21. This contact was made separately from Armory's marketing efforts.

22. Prior to these discussions, neither I nor Cosmos had any business or personal connections with Dominguez or its principals.

23. Dominguez expressed interest in acquiring Cosmos, we negotiated in good faith and at arms'-length.

24. During these negotiations, I advocated for the highest possible purchase price.

25. I also requested that Dominguez provide a "Grant Agreement," pursuant to which an entity formed by Cosmos will have a right to some of the profits of the purchasing company. The purpose of this was to provide a form of return to parties who loaned money to Cosmos prepetition, without diluting the amount of cash available to pay trade creditors.

26. Dominguez eventually provided a letter of intent with terms that were generally acceptable to the Debtor.

27. The Debtor's preference was to complete a transaction outside of bankruptcy, but Dominguez insisted that the sale must take place pursuant to Section 363 of the bankruptcy code.

28. In light of that insistence, and in light of the looming July 3, 2019 foreclosure sale, the Debtor filed this case on July 2, 2019.

### Postpetition Events

29. The Debtor's intention after filing was to seek approval of a sale to Dominguez, but also to explore other options.

30. The Debtor hoped to retain Armory to run a postpetition marketing process.

Page 4 of 5 –   DECLARATION OF JOHN P. STRASHEIM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR AND RELATED RELIEF

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

Case 19-62049-tmr11    Doc 89    Filed 10/29/19

31. However, the Debtor's operations were producing less revenue than anticipated, and Armory requested fees and commissions that were not realistic.

32. In addition, as described in the Sale Motion, the Debtor has struggled since filing this case to operate on a break-even basis, and in the absence of a sale on a very compressed timeframe – within the next few weeks at the latest – its operations would cease.

33. The existing value of the Debtor's business assets is directly related to its continued operations, and therefore a going-concern sale is necessary to provide the greatest return for creditors.

34. For that reason, the Debtor decided to seek approval of a private sale of its assets to Dominguez.[1]

35. I believe, in my business judgment, that the proposed private sale to Dominguez is in the best interests of the estate and all creditors.

36. I believe the sale price represents fair value for the Debtor's assets.

37. I do not believe a higher or better offer is a realistic possibility.

38. If the company ceased operating and were sold piecemeal, the assets would bring less value.

39. In addition, secured creditors would have no incentive to voluntarily discount their claims, as they have done here.

I declare under penalty of perjury under the laws of the United States of America and the State of Oregon that the foregoing is true and correct.

DATED October 29, 2019, at Junction City, Oregon.

/s/ John P. Strasheim
John P. Strasheim

---

[1] The Debtor also solicited Armory's participation in the private sale proceeding, but Armory required $25,000 plus hourly fees and costs just to provide testimony regarding their prepetition marketing efforts. The Debtor did not deem that a worthwhile expense.

Page 5 of 5 – DECLARATION OF JOHN P. STRASHEIM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR AND RELATED RELIEF

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

Case 19-62049-tmr11    Doc 89    Filed 10/29/19